*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEMARIO LARON BATTLE,

       Defendant-Appellant.

UNPUBLISHED
September 23, 2024

No. 365952
Wayne Circuit Court
LC No. 21-008070-01-FH

Before: BOONSTRA, P.J., and CAVANAGH and PATEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's revocation of his probation. The trial court sentenced defendant to a prison term of 18 to 30 months for the original offense of attempted carrying of a concealed weapon, MCL 750.227. We affirm.

## I. FACTUAL BACKGROUND

On March 17, 2022, defendant, having been charged with one count of carrying of a concealed weapon (CCW), MCL 750.227, pleaded guilty to attempted CCW. Defendant was sentenced to probation on April 18, 2022. Almost immediately after being placed on probation, defendant made multiple online submissions to the Federal Threat Intake Processing System (TIPS). The TIPS line is a repository through which the public can notify the Federal Bureau of Investigation (FBI) of information they believe needs to be investigated. Defendant's TIPS submissions contained several threats, including threats to bomb United States federal buildings, the state of Michigan, white and Arabic people, "GM," and threats to "shoot up" a retirement home. On May 12, 2022, defendant was arraigned for a probation violation on the basis of his threats. The trial court denied defendant bond and set a hearing date for May 18, 2022.

---

[1] *People v Battle*, unpublished order of the Court of Appeals, entered August 8, 2023 (Docket No. 365952).

During the May 18, 2022 hearing, the prosecution requested an adjournment. The prosecution required additional time to complete a "*Touhy* letter"[2] to allow an FBI agent to be called as a witness during the hearing. The trial court granted the adjournment. On June 6, 2022, the scheduled hearing was adjourned, off the record, at the request of the defense. On July 13, 2022, defendant underwent a mental health evaluation to determine his competency to stand trial. On July 19, 2022, another scheduled review date was adjourned, off the record, at the request of the defense. The report from defendant's mental health evaluation was drafted on July 21, 2022, concluding that defendant was competent to stand trial. On August 19, 2022, a hearing was held during which the parties agreed to schedule the probation violation hearing on September 7, 2023.

During the hearing, Sergeant Jenell Nettles, a sergeant with the Detroit Police Department assigned to the FBI Federal Task Force, testified that he interviewed defendant after the threats. Defendant admitted to submitting posts to the TIPS line, but denied making threats and denied the number of posts alleged by the prosecution. The prosecution presented evidence of defendant's posts and evidence that the posts were traced to defendant's Internet Protocol (IP) address.

The trial court concluded, based on Sergeant Nettles's testimony, the exhibits, and defendant's admission, that defendant had violated the terms of his probation.[3] The trial court revoked defendant's probation. During resentencing on defendant's attempted CCW conviction, the trial court noted that defendant's sentencing guidelines range was zero to nine months. The trial court sentenced defendant to a prison term of 18 to 30 months, stating that the sentence was reasonable and proportionate because the guidelines did not account for defendant's probation violation and the public safety concerns related to defendant's threats. Defendant was also given 188 days jail credit. This appeal followed.

## II. STANDARD OF REVIEW

"The decision to revoke probation is a matter within the sentencing court's discretion." *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

"We review a trial court's factual findings for clear error." *People v Manuel*, 319 Mich App 291, 299; 901 NW2d 118 (2017). "A ruling is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (quotation marks, citation, and footnote omitted).

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion. A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality. . . ." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citations omitted).

---

[2] See *US ex rel Touhy v Ragen*, 340 US 462; 71 S Ct 416; 95 L Ed 417 (1951).

[3] The terms of defendant's probation forbade him from engaging "in any assaultive, abusive, threatening or intimidating behavior."

We review de novo issues of statutory interpretation. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

### III. TIMING OF PROBATION VIOLATION PROCEEDINGS

Defendant argues that the trial court's finding of a probation violation and the resulting sentence must be vacated because the trial court held the probation violation hearing more than 14 days after defendant's arrest without releasing him from custody. We agree that the trial court failed to follow the applicable court rule, but we disagree with the remedy proposed.

MCR 6.445(C) provides:

The hearing of a probationer being held in custody for an alleged probation violation must be held within the permissible jail sentence for the probation violation, *but in no event longer than 14 days after the arrest or the court must order the probationer released from that custody pending the hearing*. If the alleged violation is based on a criminal offense that is a basis for a separate criminal prosecution, the court may postpone the hearing for the outcome of that prosecution. [MCR 6.445(C) (emphasis added).]

The use of the word "must" in a statute indicates a mandatory, rather than discretionary, course of conduct. *Allard v State Farm Ins Co*, 271 Mich App 394, 398; 722 NW2d 268 (2006). MCR 6.445(C) contains no exceptions or preconditions for its directive to release the probationer pending the probation violation hearing if such hearing is not held within 14 days of his arrest. Therefore, the trial court clearly violated MCR 6.445(C) by failing to release defendant from custody pending the probation hearing. However, MCR 6.445 does not explicitly prescribe a remedy for the violation of subrule (C). The question then becomes whether this Court should hold that the trial court lost the authority to hold the probation violation hearing when it violated the court rule.

Several Michigan cases have held that courts should not create a remedy when one is not imposed by statute. See, e.g., *Jones v Dep't of Corrections*, 468 Mich 646, 656 n 13; 664 NW2d 717 (2003) ("The Legislature well knows how to provide remedies for statutory time limitation violations and has explicitly done so in other settings."); *Dep't of Consumer & Indus Servs v Greenberg*, 231 Mich App 466, 468–469; 586 NW2d 560 (1998) (holding that a licensee is not entitled to relief where disciplinary subcommittee does not meet and impose a penalty within 60 days of receipt of examiner's recommendations); *In re Pardee*, 190 Mich App 243, 252; 475 NW2d 870 (1991) (holding the appellant was not entitled to relief where court fails to conduct a termination hearing within 42 days of filing of the petition). But other cases have held that the appropriate remedy for a trial court's violation of a mandatory time provision is dismissal of the proceedings against a defendant without prejudice. See *People v Weston*, 413 Mich 371, 372-373; 319 NW2d 537 (1982) (holding that the trial court's failure to schedule the defendant's preliminary examination within the period required by the Legislature demanded dismissal of the criminal charge); *In re Contempt of Tanksley*, 243 Mich App 123, 129; 621 NW2d 229 (2000) (holding that the trial court's failure to hold a contempt hearing on a charged personal protection order violation

within 72 hours of a respondent's arrest without releasing him from custody, as required by statute, required dismissal of the charge without prejudice)[4].

We conclude that this case is most analogous to *Jones*, 468 Mich at 651-656. In *Jones*, the defendant argued that the parole board's failure to hold a fact-finding hearing concerning his parole violation charge within 45 days of his arrest and availability for return to a state correctional facility, in violation of MCL 791.240a(1), deprived the board of the authority to revoke his parole and required his release from prison. *Id.* Our Supreme Court disagreed, noting that "[a] prisoner enjoys no constitutional or inherent right to be conditionally released from a validly imposed sentence" and that "parole revocation is not a state of a criminal prosecution" although still subject to "limited due process requirements." *Id.* at 651-652. The Court further noted that "matters of parole lie solely within the broad discretion of the parole board, and . . . the freedom enjoyed by a paroled prisoner is a *limited* freedom[;]" moreover, a paroled prisoner is still in the legal custody of the Department of Corrections despite being permitted to leave prison. *Id.* at 652. The Court held that the language of MCL 791.240a "neither deprives the parole board of jurisdiction to revoke parole nor requires the discharge of a parolee where the required hearing has been delayed beyond the forty-five-day period prescribed." *Id.* at 653. It therefore declined to engraft "the relinquishment of the parole board's statutory authority to revoke parole" as a remedy for violation of the 45-day limitation period provided in MCL 791.240a(1) when such a remedy was not stated or implied by the text of the statute itself. *Id.* at 656 ("To infer such a legislative intent where none is indicated either in the text of MCL 791.240a or elsewhere in the statutory scheme would be an exercise of *will* rather than *judgment*.") (quotation marks and citation omitted).

Much like parole, the Legislature has declared that a sentence of probation is "a matter of grace requiring the agreement of the probationer to its granting and continuance." See MCL 771.4(1). Probation revocation hearings are not criminal proceedings subject to the rules of evidence or criminal procedure. MCL 771.4(2). Because a probationer has already been convicted of a crime, if the trial court revokes probation, "the probationer is neither burdened with a new conviction nor exposed to punishment other than that to which he was already exposed as a result of the previous conviction for which he is on probation." *People v Johnson*, 191 Mich App 222, 225-226; 477 NW2d 426 (1991). Accordingly, a probationer's due-process rights are limited regarding probation revocation—the probationer's "absolute liberty" interests are not at stake, because the probationer has already been convicted. *People v Ritter*, 186 Mich App 701, 705-706; 464 NW2d 919 (1991). Only the probationer's "conditional liberty" is at risk, which is "properly dependent on observance of the terms of the probation order." *Id.*

Defendant's status as a probationer is similar to the status of the defendant in *Jones*, and we conclude that the reasoning of *Jones* applies with equal force here. We therefore decline to engraft a remedy for the violation of MCR 6.445(C) that deprives the trial court of its authority to conduct a probation revocation hearing on the charges against defendant, when no such remedy exists in the text of the court rule. *Jones*, 468 Mich at 656. The fact that defendant was

---

[4] MCL 764.15b, the statute prescribing the 72-hour limitations period at issue in *Tanksley*, was amended shortly after *Tanksley*'s release to specifically prohibit dismissal or other sanctions based on failure to comply with a time limit prescribed by the statute. See 1999 PA 269.

-4-

not released from custody pending the revocation hearing within 14 days of his arrest does not require us to vacate the trial court's revocation of his probation or the resulting sentence.

To the extent defendant argues, without regard to his custodial status, that the untimeliness of his probation revocation hearing violated his right to due process, we also disagree. We have previously drawn analogies between issues related to the timing of probation violation proceedings and those involving the right to a speedy trial. *People v Miller*, 77 Mich App 381; 258 NW2d 235 (1977).[5] "Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006); see also US Const, Am. VI; Const 1963, art 1, § 20. "In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261.

Regarding the length and reason for the delay, in this case, defendant was arraigned on the probation violation on May 12, 2022. The probation violation hearing was adjourned multiple times, until it was finally held on September 7, 2022. During the May 18, 2022 hearing, the prosecution asked for an adjournment because it needed time to complete a Touhy letter for Nettles to testify. The trial court cited concerns related to docket congestion and the Covid-19 pandemic, and ultimately adjourned the probation violation hearing to June 6, 2022. This initial delay from May 18 until June 6 is therefore mostly attributable to the prosecution. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997) (quotation marks and citation omitted). The hearing was then adjourned two more times, on June 6, 2022, and July 19, 2022. Both adjournments were made off the record, at the request of the defense. Although the reason for these delays is unclear, it is likely these adjournments were related to defendant's mental health evaluation, and thus they may be attributed to defendant. Defendant then agreed to another adjournment on August 19, 2022. Because the majority of the overall delay was attributable to defendant, and the short delay attributable to the prosecution was reasonable based on the fact that the prosecution had only just received notice of defendant's TIPS submissions and needed time to secure the testimony of a federal agent witness, these two factors weigh against defendant.

Regarding "defendant's assertion of the right," *Williams*, 475 Mich at 261, the defense argued during the May 18, 2022 hearing that defendant was brought into custody too quickly and asked for defendant to be released on bond, but did not specifically object to the adjournment. The next two adjournments were made at the request of defendant. While the matter was pending, defendant never moved to be released from custody. This factor is at best, neutral.

The final factor is "the prejudice to . . . defendant." *Williams*, 475 Mich at 261. Defendant has not presented any evidence that the delay hampered his ability to defend himself against the

---

[5] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *People v Craig*, 342 Mich App 217, 226 n 3; 994 NW2d 792 (2022) (quotation marks and citations omitted).

probation revocation charge. And although defendant was in custody during the period between the arraignment and the probation violation hearing, defendant received jail credit for this time when he was sentenced. Therefore, the delay in proceedings ultimately did not affect the amount of time defendant was incarcerated.

Under these circumstances, we conclude that defendant's due process rights were not violated by the delay in holding the probation revocation hearing. *Williams*, 475 Mich at 261.

## IV. SUFFICIENCY OF FACTUAL FINDINGS

Defendant also argues the trial court erred by failing to specifically find facts and separately state its conclusions during the probation violation hearing. We disagree.

"Probation is a matter of grace, not of right, and the trial court has broad discretion in determining the conditions to impose as part of probation." *Breeding*, 284 Mich App at 479-480. Therefore, "[w]hen a judge imposes a sentence of probation, the Legislature intended that probation be revocable on the basis of a judge's findings of fact at an informal hearing, and largely at the judge's discretion." *People v Harper*, 479 Mich 599, 626; 739 NW2d 523 (2007) (citation omitted).

MCR 6.445(E) concerns probation violation hearings, and provides in relevant part:

(1) *Conduct of the Hearing*. The evidence against the probationer must be disclosed to the probationer. The probationer has the right to be present at the hearing, to present evidence, and to examine and cross-examine witnesses. The court may consider only evidence that is relevant to the violation alleged, but it need not apply the rules of evidence except those pertaining to privileges. The state has the burden of proving a violation by a preponderance of the evidence.

(2) *Judicial Findings*. At the conclusion of the hearing, the court must make findings in accordance with MCR 6.403 and, if the violation is proven, whether the violation is a technical or non-technical violation of probation.

MCR 6.403 provides:

When trial by jury has been waived, the court with jurisdiction must proceed with the trial. The court must find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record.

"Factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *People v Legg*, 197 Mich App 131, 134-135; 494 NW2d 797 (1992) (citations omitted). "The court need not make specific findings of fact regarding each element of the crime. A court's failure to find the facts does not require remand where it is manifest that the court was aware of the factual issue, that it resolved the issue, and that further explication would not facilitate appellate review." *Id.*

At the close of the probation violation hearing, the trial court revoked defendant's probation on the basis of the testimony and exhibits presented at the hearing and defendant's admissions. It was not necessary for the trial court to engage in extensive factual findings. See *id*. Although the trial court's statements were brief, the trial court demonstrated that it was aware of the issues and had based its decision to revoke probation on evidence presented in the hearing. The prosecution presented significant evidence showing that defendant had violated his probation by making violent threats, several of which were submitted to the FBI's TIPS line and were traced to defendant's IP address. Defendant admitted to Nettles that he made submissions to the TIPS line. Under these circumstances, the trial court did not abuse its discretion by finding that there was a probation violation and revoking defendant's probation. *Breeding*, 284 Mich App at 479.

## V. PROPORTIONALITY OF DEFENDANT'S SENTENCE

Defendant also argues that the out-of-guidelines sentence imposed by the trial court was unreasonable and disproportionate. We disagree.

In *People v Lockridge*, our Supreme Court held Michigan's sentencing guideline scheme is "advisory only." *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). Although not mandatory, the guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391. "[T]rial courts must consult those Guidelines and take them into account when sentencing." *Id*. (quotation marks and citations omitted). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392.

"[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality." *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017). "Trial courts must consult the sentencing guidelines when imposing a sentence, but the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Lydic*, 335 Mich App at 500 (quotation marks and citations omitted).

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [*People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).]

"[T]he legislative sentencing guidelines apply, even if the sentence follows the imposition and revocation of probation." *People v Hendrick*, 472 Mich 555, 560; 697 NW2d 511 (2005).

> In the event that the court revokes a defendant's probation, it may sentence the defendant in the same manner and to the same penalty as the court might have done if the probation order had never been made. A judge, however, is not required to sentence the defendant in the same manner. [*Id*. at 562 (quotation marks, citations, and footnote omitted).]

A trial court may "consider postprobation factors in determining whether substantial and compelling reasons exist to warrant an upward departure from the legislative sentencing guidelines.[6]" *Id.* (footnote added) But "not every probation violation and revocation warrants an upward departure. A trial court has broad latitude in deciding whether to revoke probation. It has less latitude in imposing a sentence in excess of the guidelines." *Id.* at 563.

In this case, the minimum sentencing guidelines range was zero to nine months. The guidelines accounted for defendant's prior misdemeanor conviction, the number of victims, and that a weapon was displayed or implied. Defendant argues that his out-of-guidelines sentence is unreasonable because the threats made by defendant were not legitimate threats, only the nonsensical ramblings of someone in need of mental health treatment. We disagree. The defense did not present any evidence that defendant was diagnosed with a mental health condition that had caused his behavior. When defendant underwent a mental health evaluation, he was found competent to stand trial. Further, even if defendant's threats were the result of an underlying mental health condition, it does not necessarily follow that they were illegitimate. The trial court reasonably concluded that defendant's threats raised serious public safety concerns not accounted for by the guidelines. Defendant's threats included threats to bomb federal buildings and the state of Michigan. Defendant also made threats against specific racial and ethnic groups, and threatened to bomb "GM" and to "shoot up the old people home." Defendant's threats were numerous and specific. The violent and specific nature of the threats made by defendant, his probation violation, and the risk to public safety are all legitimate considerations not accounted for by the sentencing guidelines at the time of his original sentencing. Given the circumstances of defendant's probation violation, we conclude that the trial court's sentence was reasonable and proportionate. *Steanhouse*, 500 Mich at 477.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Sima G. Patel

---

[6] We no longer use the "substantial and compelling reasons" standard when evaluating out-of-guidelines sentences. *Hendrick*, 472 Mich at 562; see also *Lockridge*, 498 Mich at 392. Regardless, the principle in *Hendrick*, that trial courts may consider probation violations when imposing an out-of-guidelines sentence, remains valid. *Hendrick*, 472 Mich at 562.